UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
SHOPPERTRAK RCT CORPORATION,
                              Plaintiff,

                -v-

BARNES & NOBLE, INC.,
                              Defendant.
———————————————————————

20-CV-3814 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff ShopperTrak RCT Corporation ("ShopperTrack") sued Defendant Barnes & Noble, Inc. ("Barnes & Noble") for breach of contract. (*See* Dkt. No. 18 ("Compl.").) Barnes & Noble has moved to dismiss. (*See* Dkt. No. 21.) For the reasons that follow, that motion is denied.

**I.     Background**

The following facts are taken from the operative complaint and assumed true for the purposes of this motion.

In 2008, Barnes & Noble, the largest retail bookseller in the United States, entered into a Purchase Agreement ("Agreement") with ShopperTrak, a retail analytics company. (Compl. ¶¶ 7–9.) Under the Agreement, Barnes & Noble purchased ShopperTrak's Orbit devices, which track shoppers entering and exiting a retail store, along with ShopperTrak's Systems Management Services ("SMS"), which include data collection from and maintenance of Orbit devices. (Compl. ¶¶ 7, 9; Dkt. No. 18-1 ("Agmt.") at 3 § 2(a).) The Statement of Work ("SOW") attached to the Agreement contemplated that ShopperTrak would install Orbit devices and offer SMS at ten Barnes & Noble stores for a pilot period, after which Barnes & Noble would decide whether to expand the system to all its stores. (Compl. ¶ 12; Agmt. at 16.)

1

The parties executed several addenda to the Agreement. In October 2016, the parties executed Addendum No. 2, which replaced Section 3(e) of the Agreement. (Compl. ¶¶ 24–25; Dkt. No. 18-4 ("Add. #2").) While the original Section 3(e) provided that "[u]nless otherwise provided in the SOW, the minimum term for the SMS Data Services is one year from the end of any pilot period" (Agmt. at 4 § 3(e)), the new Section 3(e) directed that:

> The initial term of this Agreement shall continue through October 31, 2019 (the "Initial Term"). After the Initial Term, this Agreement will automatically renew for additional one (1) year periods (each a "Renewal Term," and all Renewal Terms together with the Initial Term, the "Term"), unless either party provides written notice of nonrenewal . . . at least thirty (30) days prior to the expiration of the then-current term.

(Add. #2.) Addendum No. 2 also provided a discount to "address [Barnes & Noble]'s pricing concerns while also ensuring the continued relationship between [Barnes & Noble] and ShopperTrak." (Compl. ¶¶ 23, 25.)

In February 2017 the parties executed Addendum No. 3, which, *inter alia*, amended the "Initial Term" in Addendum No. 2 to continue through December 31, 2020. (Compl. ¶ 27; Dkt. No. 18-5 ("Add. #3").) Once again, Addendum No. 3 "reflected a trade-off of decreased revenue on the front-end for sustained revenue over time." (Compl. ¶ 28.) Pursuant to Addendum No. 3, ShopperTrak's system was installed at all Barnes & Noble stores. (Compl. ¶ 29.)

On October 18, 2019, Barnes & Noble's Chief Information Officer emailed ShopperTrak to inform the company that a recent change in Barnes & Noble control meant that the bookseller would no longer use ShopperTrak's products or services, stating that such email "provid[ed] notice of termination of the [] Agreement and all addenda effective immediately." (Compl. ¶ 33.) On November 5, 2019, the Barnes & Noble CIO informed ShopperTrak that Barnes & Noble would deactivate all Orbit devices at its locations and that by doing so Barnes & Noble

2

would no longer be contractually liable for monthly SMS fees.  (Compl. ¶ 36.)  Although Barnes & Noble deactivated the Orbit devices, ShopperTrak continued to provide all contracted-for services to the extent possible and to send invoices to Barnes & Noble.  (Compl. ¶¶ 38–39.)  Barnes & Noble has not paid any invoices, which total over $600,000 by December 31, 2020, the end date of Agreement's initial term.  (Compl. ¶¶ 42–43.)

ShopperTrak brought suit for breach of contract in May 2020, filing an amended complaint in July 2020 in response to Barnes & Noble's initial motion to dismiss.  (*See* Dkt. Nos. 1, 12; Compl.)  Barnes & Noble again moves to dismiss.  (Dkt. No. 21.)

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court "must accept as true all of the factual allegations contained in the complaint."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).  While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court draws "all inferences in the light most favorable to the nonmoving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## III.    Discussion

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citations omitted).  "When pleading these elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at

issue." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) (citation omitted), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).

### A.    Specific Contract Provision

Barnes & Noble contends that while ShopperTrak "alleges generally" that the bookseller violated the Agreement, the breach of contract claim must be dismissed because ShopperTrak has failed to identify which specific provision of the Agreement Barnes & Noble violated. (Dkt. No. 22 at 6–8; Dkt. No. 25 at 2–3.)

Case law from this District supports the notion that a plaintiff in a breach of express contract case must identify the provisions breached in her pleadings. *See, e.g.*, *Mtume v. Sony Music Ent.*, 18 Civ. 6037, 2020 WL 4895360, at *4 (S.D.N.Y. Aug. 19, 2020) (holding that while a party "clarifies in its opposition papers" which contract provision was breached, the pleadings "d[id] not specifically" identify such provisions and "must be dismissed on that basis alone"); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015) ("The Court cannot supply a specific obligation the parties themselves did not spell out. Moreover, New York law and the *Twombly–Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed." (internal quotation marks and additional citations omitted) (quoting *Tonking v. Port Auth. Of New York and New Jersey,* 3 N.Y.3d 486, 490 (2004)).

ShopperTrak is saved by citing Section 3(b) of the Agreement, which provides that "[p]ayments are due as provided in the SOW or, if not so provided, within 30 days of the date of receipt of invoice." (Compl. ¶ 40; Agmt. at 3 § 3(b).) Barnes & Noble allegedly breached by

4

failing to pay such invoices.  (Compl. ¶ 48.)  ShopperTrak's citation to Section 3(b) is sufficiently specific to survive a motion to dismiss on this issue.

### B. Fixed-Term Contract

The parties spar over whether the Agreement is a fixed-term contract and, thus, not terminable at will.  The Agreement's automatic renewal term added in Addendum No. 2, Barnes & Noble argues, rendered the contract indefinite and terminable at will.  (Dkt. No. 25 at 4–5.)

This case is like *Ketcham v. Hall Syndicate, Inc.*, 236 N.Y.S. 2d 206 (Sup. Ct. 1962), *aff'd without opinion*, 242 N.Y.S.2d 182 (1st Dep't 1963).  *Ketcham* involved a contract that expressly stated it would renew automatically from year to year, except both parties had the right to terminate under certain conditions.  *Ketcham*, 236 N.Y.S.2d at 212–13.  The court held that the contract was not indefinite, even if it potentially provided for perpetual performance, because "specific provision [was] made for termination."  *Id. at* 213.  The court continued that "[i]t was the intention of the parties that the contract should run so long as [certain conditions were met] and that during such period that neither party should be able to desert the other."  *Id*.

The Second Circuit analyzed *Ketcham* in *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Company*, 976 F.3d 239 (2d Cir. 2020).  There, the contract had no definite term but included a provision affording one party the option to terminate if certain events occurred.  *Id*. at 242.  Because the provision was optional and unilateral, the Second Circuit held that the contract was indefinite and thus terminable at will.  *Id*. at 246–47.  Critically for the present case, the Second Circuit differentiated the contract in *Ketcham* as one that featured optional but *mutual* termination rights, rendering the contract not terminable at will.  *Id*. at 246 n.9.

The contract in this case is like the one in *Ketcham*: it renews automatically and gives *both* parties the optional right to terminate given the occurrence of certain events. (Agmt. at 7 § 10.) Thus, the Agreement was not indefinite and not terminable at will.

**C.    Breach**

The parties next argue whether — and for how long — Barnes & Noble had an obligation to pay for SMS. ShopperTrak alleges that Barnes & Noble was required to pay for SMS for the "term" in Addendum No. 2. (Compl. ¶ 26.) The bookseller, meanwhile, contends that the Agreement did not require it to purchase *any* "SMS subscriptions," and that Addendum No. 2's "term" refers only to the overall length of the Agreement and, thus, does not obligate it to pay for SMS. (Dkt. No. 22 at 6–9.)

The Agreement provides that Barnes & Noble must "purchase . . . SMS/Data Services . . . for the term provided in the SOW." (Agmt. at 3 § 2(a).) While the SOW confirms that SMS is included in the Agreement, it does not specify a term. (Agmt. at 10–11, 14–15.) Unfortunately for Barnes & Noble, this drafting oversight does not negate its obligation to purchase SMS over the course of a set term. The Agreement itself, in the original version of Section 3(e), specifies that "the minimum term for the SMS Data Services is one year from the end of any pilot period." (Agmt. at 4 § 3(e).) Furthermore, when the parties executed Addendum No. 2, replacing Section 3(e), they plainly extended the SMS minimum term. (Add. #2.) And it appears that nothing in the agreement or the parties' course of dealing contemplates the removal of Orbits and the resultant lack of SMS.

This Court cannot conclude on the facts alleged that Barnes & Noble had no obligation to pay for SMS for the term in the Agreement.[1]  The case may not be dismissed on that basis.

### D. Damages

Finally, the parties dispute whether ShopperTrak has adequately pleaded damages. Barnes & Noble levies three main arguments: ShopperTrak (1) failed to allege that it suffered damages attributable to the bookseller's breach; (2) did not plead damages in the operative complaint; and (3) suffered no damages because Barnes & Noble deactivated the Orbit devices after its attempted termination.  (Dkt. No. 25 at 6–7.)

Barnes & Noble's first two contentions are easily rejected:  Barnes & Noble allegedly breached Section 3(b) of the Agreement by refusing to pay ShopperTrak's invoices, which it was obligated to do until the end of the Agreement's term.  (Compl. ¶¶ 38–43, Agmt. at 3 § 3(b).)  As a result, ShopperTrak did not receive payments to which the parties had agreed.  Moreover, it is unclear to this Court how deactivating the Orbit devices affects ShopperTrak's damages.  *See, e.g.*, *Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366, 373 (1992) ("Contract damages are ordinarily intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed." (citing Restatement (Second) of Contracts §§ 344, 347 cmt. a)).

ShopperTrak has sufficiently pleaded damages to survive a motion to dismiss.

### IV. Conclusion

For the foregoing reasons, Barnes & Noble's motion to dismiss is DENIED.

---

[1] As ShopperTrak suggests, evidence regarding the course of conduct between the two parties — across more than a decade — may prove useful in resolving this question. (Dkt. No. 24 at 9.)

Barnes & Noble shall file an answer to the operative complaint within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 12 and 21.

SO ORDERED.

Dated: February 10, 2021
  New York, New York

_____
J. PAUL OETKEN
United States District Judge